IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES J. ARMSTRONG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| V. | § | |
| | § | 3:05-CV-02006-K |
| ASSOCIATES INTERNATIONAL | § | |
| HOLDING CORP. d/b/a | § | |
| CITIFINANCIAL INTERNATONAL | § | |
| LTD; ASSOCIATES FINANCE; and | § | |
| CITIGROUP, INC., | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Associates International Holding Corp., d/b/a Citifinancial International Ltd. and Citigroup, Inc.'s (collectively "Defendants") Motion to Compel Arbitration and to Dismiss or Stay Proceedings (Document No. 54). The Court **GRANTS** Defendants' motion and this case is hereby **DISMISSED**. The Court directs the parties to arbitrate the Plaintiff's claims in accordance with the arbitration policy.

I.   **Background**

This is an employment discrimination and breach of contract dispute between Plaintiff and Defendant. In November 2000, Defendant Associates International Holding Corporation ("AIHC") acquired Plaintiff's former employer, Associates First

Capital Corporation. After the acquisition, Plaintiff was hired by AIHC to serve as assistant general counsel in Irving, Texas. AIHC does business as "CitiFinancial International" and is part of the U.S. Consumer Group, a group of Citigroup, Inc. entities (collectively the "Company").

In an explanatory memorandum dated December 17, 2001, the Company's employees were notified that the Company was adopting an Employment Arbitration Policy ("EAP"), effective immediately. The memorandum stated that, under the EAP, employees and the Company agreed to make arbitration the required and exclusive forum of resolution for all employment-related disputes that are based on legally protected rights. The memorandum further stated that the EAP was a condition of employment and that an employee's continued employment would constitute acceptance of the EAP. The memorandum asked each employee to sign and return an attached receipt. On December 18, 2001, Armstrong signed the memorandum receipt acknowledging that he had received the EAP and would continue his employment with the Company.

In addition, Armstrong signed a separate receipt form on November 7, 2002 acknowledging that he had received the Company's Employee Handbook, read it carefully, and would comply with all its policies. The receipt contained the following language: "**Important:** I understand this *Handbook* contains a provision that requires me to submit employee-related disputes to binding arbitration... I have read that provision

- 2 -

carefully." The Handbook contained the same EAP that was distributed in December 2001.

On January 2, 2003, Plaintiff's employment with AIHC ended. Plaintiff filed this action claiming Defendants (1) violated the Age Discrimination in Employment Act ("ADEA"), (2) breached contractual obligations owed under transition and severance agreements, and (3) violated Puerto Rico's statutory separation pay law.

## II.  Legal Standard and Analysis under the Federal Arbitration Act

Both Federal and applicable state law strongly favor arbitration. *See* Federal Arbitration Act, 9 U.S.C. § 3; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Camella & Co. Inc. V. Goodwin,* 924 S.W. 2d 943, 944 (Tex. 1996). Under the Federal Arbitration Act ("FAA"), a valid agreement to arbitrate is irrevocable and enforceable if such agreement is part of a transaction involving commerce and valid under the principles of contract law. 9 U.S.C. § 2. Therefore, where the Court finds the parties entered into a valid contract to arbitrate a dispute involving commerce, its role is limited to enforcing that agreement. *See Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687 (1996); *AT&T Techs., Inc. v. Commn. Workers of America,* 475 U.S. 643, 649-50 (1986). In this case, neither party dispute that the contract involves commerce, and courts construe FAA's "involving commerce" language to include employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

### A.     Plaintiff Entered into a Valid Arbitration Agreement

Plaintiff agreed to arbitrate all employment related disputes by signing the EAP memorandum receipts and continuing his employment with AIHC. Arbitration is a matter of contract. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). When deciding whether Plaintiff and Defendants agreed to arbitrate all employment-related disputes, the Court must apply state-law governing the formation of contracts. *Id.* Under Texas law, employers, like Defendants, may modify the terms of an at-will employment relationship as a condition of continued employment so long as employers notify their employees of the modification and the employees accept the change. *Hathaway v. General Mills, Inc.,* 711 S.W.2d 227, 229 (Tex. 1986); *In re Halliburton Co.,* 80 S.W.3d 566, 568 (Tex. 2002). An employee, like Plaintiff, who continues working with knowledge of a change in the at-will employment relationship is deemed to have accepted the changes as a matter of law. *Hathaway,* 711 S.W.2d at 229; *Halliburton,* 80 S.W.3d at 568 .

Under Texas law, Plaintiff and Defendants clearly have an agreement to arbitrate. Plaintiff was notified of the EAP and he agreed, in writing, to be bound by the EAP on two separate occasions. In December 2001, Plaintiff signed an "Acknowledgment" that confirmed he received the December 17, 2001 memorandum which introduced the EAP to all employees of the Company. The memorandum explained that, as an employee of the Company, Plaintiff's "continued employment will constitute acceptance of the

Arbitration Policy." Because Plaintiff (1) had notice that the terms of his employment would be modified by the EAP, (2) signed the acknowledgment receipt to confirm he received the EAP, and (3) continued working for Defendants thereafter, Plaintiff accepted and is bound by his agreement to arbitrate employment disputes. *See Hathaway,* 711 S.W.2d at 229; *Halliburton,* 80 S.W.3d at 568 (finding an employee who continued working after he was notified that his employment conditions would be modified by an arbitration policy was bound to arbitrate).

Likewise, on November 7, 2002, Plaintiff reaffirmed his commitment to arbitrate all employment disputes when he signed a receipt form attached to the Company's Employee Handbook acknowledging that he received the Handbook, had read it carefully, and would comply with all of its policies. The Handbook contained the EAP, and the receipt he signed even had the following disclaimer: "**Important:** I understand that this *Handbook* contains a provision that requires me to submit employment-related disputes to binding arbitration…" Knowing that the EAP was a condition of employment, Plaintiff, an employee of the Company, twice accepted the agreement in writing to arbitrate employment disputes. *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (presuming a party who has the opportunity to read an arbitration agreement and signs it, knows its contents) Therefore, he is bound by his agreement.

### B. Plaintiff's Agreement is Supported by Sufficient Consideration

Furthermore, the agreement between Plaintiff and AIHC is supported by sufficient consideration. Plaintiff first argues that he is not bound by the EAP because Defendants mutual promises do not constitute sufficient consideration. However, under Texas law, mutual promises to arbitrate employment disputes constitute sufficient consideration between an employer and employee entering into an arbitration agreement. *Haliburton,* 80 S.W.3d at 569-70. The EAP binds both the Company, including AIHC, and its employees, including Plaintiff, to arbitrate employment disputes. The EAP makes clear that the promises to arbitrate are reciprocal. Under the EAP, "all employment disputes" are resolved by arbitration, and the results from arbitration are final and binding on both the Company and its employees. Because the EAP contains mutual promises by the Company and Plaintiff to arbitrate, it is supported by adequate consideration. *Id.*

Plaintiff also argues that the EAP lacks mutual promises to arbitrate because the Company reserved the right to "revise, amend, modify, or discontinue the Policy at any time in its sole discretion." However, as Defendants note, any revision or amendment to the EAP can only take effect 30 days after notice to the employee. *Barton v. Citigroup,* 2004 WL1285033 (N.D. Tex. 2004)(interpreting the Company's nearly identical arbitration policy). The Texas Supreme Court has upheld arbitration agreements with similar notice provisions. *Id.*; *Halliburton,* 80 S.W.3d at 569-70. Plaintiff's arguments,

thus, fail to establish that the arbitration agreement lacked sufficient consideration. Plaintiff, therefore, entered into a valid arbitration agreement which involved commerce and was supported by sufficient consideration.

### C. Plaintiff has Presented No Ground for Revocation

Plaintiff has established no ground for the revocation of his contractual agreement to arbitrate. Plaintiff claims he was fraudulently induced into signing the Arbitration Agreement on November 7, 2002 because the Company knew it was planning to get rid of him within months. First, Plaintiff wholly ignores that he agreed to arbitrate a year earlier when he first signed the memorandum receipt on December 18, 2001. He alleges no fraud with respect to that contract. In addition, Plaintiff offers no evidence that would support any element of fraud at the time he signed the second memorandum receipt. Specifically, Plaintiff fails to proffer any evidence that would show Defendants made material and false representations in order to induce him to agree to the EAP.

To avoid his obligations under the EAP, Plaintiff also claims unilateral mistake. However, as Defendants correctly note, a mistake by one party is generally not grounds for voiding a contract. *Wentwood Woodside I, IL v. GMAC Commercial Mortgage Corp.,* 419 F.3d 310, 316 (5th Cir. 2005)(holding under Texas law, the unilaterally mistaken party alone bears responsibility for its error). Under Texas law, a unilateral mistake provides relief from contractual obligations only when (1) the mistake relates to a material term of the contract, (2) the mistake makes enforcement of the contract unconscionable and

(3) the mistake is made despite the exercise of due care. *Ibarra v. Texas Employment Commission,* 823 F.2d 873, 879 (5th Cir. 1987). Plaintiff fails to establish the elements of the defense of unilateral mistake. The "mistake" Plaintiff claims he made was not with respect to the terms of the EAP but rather that he lacked knowledge that the Company planned to downsize their Dallas operations. Even if a unilateral mistake occurred, Plaintiff fails to show that the mistake is so great that to enforce the contract would be unconscionable. *Id.* Under the EAP, an arbitrator may award Plaintiff the same relief as he may find in this Court. The EAP states that "the arbitrator shall be governed by applicable federal, state, and/or local law." In addition, the arbitrator may award compensatory damages and injunctive relief as permitted by applicable law, and where expressly provided by statute, the arbitrator can award attorneys' fees and punitive damages. Therefore, an arbitration policy that does not restrict or modify an employee's substantive rights or remedies is not unconscionable.

Despite clear evidence to the contrary, Plaintiff argues that he did not believe that he was employed by, or included in, the U.S. Consumer Group, and as a result of that belief, he is not bound by the EAP. The Court finds this argument wholly without merit. Plaintiff confirmed that he worked for AIHC by writing "CitiFinancial International" when he signed the December 18, 2001 acknowledgment and writing "CFI" when he signed the November 7, 2002 acknowledgment. In addition, the cover of the Employee Handbook listed the companies which were part of the U.S. Consumer

- 8 -

Group. On that cover, CitiFinancial International was clearly listed as one of the U.S. Consumer Group companies. Plaintiff simply contends that he did not know he was employed as part of the U.S. Consumer Group even though he had no problem acknowledging that he received and accepted the EAP on two separate occasions. Even after he signed the confirmation acknowledgments, Plaintiff offers no evidence that he raised any questions about the applicability of the EAP to him or others in his division. As an employee of AIHC which does business as CitiFinancial International who has agreed to the Company's EAP, Plaintiff is bound to arbitrate.

Plaintiff argues that arbitration is not an adequate forum to resolve his employment disputes. This argument is also without any merit. Generalized attacks on arbitration are out of step with the federal policy favoring arbitration. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24-25 (1994). As aforementioned, under the EAP, an arbitrator may award Plaintiff the same relief as he may find in this Court; therefore, Plaintiff has an adequate forum to resolve his claims against Defendants.

Plaintiff has established no ground for the revocation of his contractual agreement to arbitrate. Thus, the arbitration agreement is irrevocable and enforceable under the FAA. 9 U.S.C. § 2.

### III.  Scope of Arbitration Agreement

The Court's function of contract interpretation must be carried out with appropriate deference to the federal policy that favors arbitration. *Southland Corp. v.*

*Keating,* 465 U.S. 1, 10 (1984). As in this case, where the contract contains an arbitration clause, there is a presumption of arbitrability. *AT&T,* 475 U.S. at 650. Therefore, all doubts concerning the scope of the EAP must be resolved in favor of arbitration. *Id.*

In this case, Plaintiff's claims are unambiguously and expressly covered by U.S. Consumer Group's EAP. The EAP which was attached to the December 17, 2001 memorandum and contained in the Employee Handbook states, "The Policy makes arbitration the required and exclusive forum for the resolution of all employment disputes based on legally protected rights (i.e., statutory, contractual, or common law rights)…including…claims, demands or actions under the Age Discrimination in Employment Act of 1967…the Employee Retirement Income Security Act of 1974…and any other federal, state or local statute, regulation or common law doctrine regarding…conditions of employment or termination…" Plaintiff claims that AIHC (1) forced him into retirement in violation of ADEA, (2) breached various transition and severance agreements, and (3) violated Puerto Rico's law requiring separation pay. Each of Plaintiff's claims is explicitly listed in the EAP, and it even states "all employment disputes" are subject to arbitration. Therefore, Plaintiff's claims are unambiguously covered by the EAP and subject to arbitration. Any doubt concerning the arbitrability of Plaintiff's claims are resolved in favor of arbitration. *Id.*

## V. Conclusion

On two separate occasions, Plaintiff agreed in writing to arbitrate "all employment disputes" with the Company. On both occasions, the agreement was supported by adequate consideration of mutual promises to arbitrate. Plaintiff presented no grounds to revoke the arbitration agreement, and his arguments are without merit. All Plaintiff's claims against Defendants expressly fall within the EAP, and any doubt that the claims fall outside the scope of the agreement is resolved in favor of arbitration. In accordance with the FAA and the strong federal policy favoring arbitration, this Court **GRANTS** Defendant's motion and the case is hereby **DISMISSED**.

**SO ORDERED.**

Signed September 20th, 2006.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE